UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

SHEARSON LEHMAN HUTTON,
INCORPORATED,
<u>Plaintiff-Appellant,</u>

v.                                                                                    No. 97-1849

JOHN P. VENNERS, d/b/a Prime Oil,
LTD,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Claude M. Hilton, Chief District Judge.
(CA-89-526-A)

Submitted: October 13, 1998

Decided: November 2, 1998

Before WILKINSON, Chief Judge, LUTTIG, Circuit Judge,
and GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

William J. Minor, Jr., GODARD, WEST & ADELMAN, Fairfax,
Virginia, for Appellant. William T. Freyvogel, ADAMS, PORTER &
RADIGAN, LTD., McLean, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Shearson Lehman Hutton, Inc., (Shearson) appeals from the district court's order dismissing its complaint against John P. Venners, doing business as Prime Oil, Ltd., based on an alleged breach of a standard-form Commodity Agreement (Agreement). For the reasons that follow, we affirm.

Venners is president and fifty-percent owner of Prime Oil, Ltd. In December 1988, Venners opened an account in the name of Prime Oil with Shearson and signed a pre-printed Commodity Agreement provided by Shearson. Venners signed in his capacity as president of Prime Oil but did not execute a personal guarantee. From December 1988 until March 1989, Prime Oil entered into a series of transactions for the purchase and sale of commodities futures and options contracts, resulting in losses totaling $1,067,149.55. Shearson closed the account the following month and then instituted this action against Venners seeking to hold him personally liable for Prime Oil's debt.

In May 1989, the district court stayed the case and ordered the parties to proceed with arbitration under the provisions of the arbitration agreement which was contained within the Agreement between Shearson and Prime Oil. In June 1989, Prime Oil and Venners initiated a reparations proceeding in the Commodity Futures Trading Commission ("CFTC"). Shearson counter-claimed, seeking an award of the debit balance against Prime Oil and against Venners under an "alter ego" theory. The CFTC entered its final decision in July 1992 and dismissed both Prime Oil's and Venners' claim for reparations and awarded Shearson its debit balance against Prime Oil only. The administrative law judge found that: (1) the Agreement was between Shearson and Prime Oil only; (2) Venners was not a party to the Agreement in any personal capacity; (3) Venners had not personally guaranteed any liability owed to Shearson by Prime Oil; and (4) under

2

CFTC policy, he could not "pierce the corporate veil." None of the parties appealed the CFTC's final decision.

In March 1997,* Shearson filed a motion in the district court to lift the stay to allow it to proceed against Venners. The district court lifted the stay and then granted Venners' Fed. R. Civ. P. 12(b)(6) motion to dismiss the complaint, finding that Shearson's claim against him was barred by the CFTC's ruling. Shearson appeals.

This court reviews the district court's grant of Venners' Fed. R. Civ. P. 12(b)(6) motion to dismiss de novo. See Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996). On appeal from an order granting a Rule 12(b)(6) motion to dismiss, this court accepts as true the facts as alleged in the complaint, and recognizes that dismissal is inappropriate unless, accepting as true the well-pleaded facts in the complaint and viewing them in the light most favorable to the plaintiff, "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Mylan Lab., Inc. v. Matkari , 7 F.3d 1130, 1134 & n.4 (4th Cir. 1993) (internal quotation marks omitted).

With this standard in mind, we find that the district court properly dismissed Shearson's complaint against Venners. The Agreement between Shearson and Prime Oil mandated that all controversies between or among the parties and/or the officers, directors, employees and agents of the corporation concerning the commodity futures trading account be resolved through binding arbitration. Shearson, Prime Oil, and Venners litigated all of their claims before the CFTC, which clearly ruled that Venners was not personally liable for the deficit in the Prime Oil trading account. Shearson, Prime Oil, and Venners are bound by these rulings. See Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833 (1986) (sustaining the jurisdiction of the Commodity Futures Trading Commission over state law counterclaims in reparation proceedings). Thus, Shearson was bound by the CFTC's

_____

*Shearson stated that its five-year delay in seeking an order lifting the stay was due to "the confusion following the dissolution [of Shearson Lehman Hutton into Lehman Brothers, Inc., and Smith Barney]" and that it had simply "lost track" of the matter.

determination that, as an individual, Venners was not personally liable for Shearson's losses.

As to Shearson's claim that Venners is derivatively liable under an alter ego theory, the district court properly dismissed Shearson's claim. Piercing the corporate veil is not an independent cause of action. See Thomas v. Peacock, 39 F.3d 493, 499 (4th Cir. 1994), rev'd on other grounds, 516 U.S. 249 (1996). Rather, piercing the corporate veil is a method of imposing liability on an underlying cause of action. See WILLIAM FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41, at 603 (perm. ed. rev. vol. 1990). Therefore, Shearson cannot maintain a separate cause of action against Venners based solely on an alter ego theory.

We note that the Administrative Law Judge did not resolve the alter ego issue as it is against CFTC policy to pierce the corporate veil at the Commission level. Under the Commodities Exchange Act, once Prime Oil failed to pay on the CFTC judgment, Shearson should have litigated its alter ego theory against Venners in an enforcement proceeding filed with the district court. See  7 U.S.C.A. § 18(d) (West Supp. 1998); see also Hwang v. Bull Market Commodities, Inc. [1986-1987 Transfer Binder] Comm. Fut. L. Rep. (CCH) ¶ 23,773 ("The Commission . . . has resisted imposition of liability [on the basis of an alter ego] . . . preferring`in the main to let the federal courts handle such questions during the enforcement phase of a reparation award.'") (emphasis added). Instead Shearson moved to lift the stay in the district court proceedings some four years after the CFTC judgment was entered. Even if we were to construe Shearson's motion to lift the stay as an enforcement action, Shearson's action was time-barred and filed in the wrong district court. See id. ("If any person against whom an award has been made does not pay the reparation award within the time specified by the Commission's order, the complainant, or any person for whose benefit such order was made, within three years of the date of the order, may file a certified copy of the order of the Commission, in the district court of the United States, for the district in which he resides or in which is located the principal place of business of the respondent, for enforcement of such reparation award by appropriate orders.") (emphasis added).

Accordingly, we affirm the district court's order.

AFFIRMED

4